2-15-0249 Maria Williams-Salvi, successor trustee of the Alvarez-Salvi Family Trust, plaintiff-appellant v. Village of Lake Zurich, Illinois Municipal Corporation, defendant-appellee. Arguing on behalf of the plaintiff-appellant, Attorney Mr. Michael J. Salvi. Arguing on behalf of the defendant-appellee, Attorney Mr. John Yambert. Also arguing on behalf of the defendant-appellee, Attorney Ms. Rebecca Fosler. Thank you. Mr. Salvi, there is some housekeeping. There was a motion to supplement based upon, in part, an order by the court relative to supplementing the record. And the motion to supplement is granted. You may proceed, Mr. Salvi. Thank you, Justice. Good morning. My name is Mike Salvi. I represent the appellant plaintiff in this case. May it please the court. A village has no immunity when it acquires control of a private farm and without any of the required permits or other permissive... What do the permits have to do with this? Well, the permits have to do with it because the permits in and of themselves, to get the permit, you have to comply with the ordinance. So the absence of the permit indicates that the village has not complied with the Watershed Development Ordinance. And in this case, you look like you're about to ask a question, Justice Halstead. Well, there was a time before building and zoning and floodplains, floodplain ordinances, regulations, water retention, water detention was the rage. The public policy at one time was essentially whoever comes later has to deal with the water problems. And that's been changed over time. And the law at one time, and it's evolving somewhat, was that a dominant estate doesn't become a Serbian estate because you, as a homeowner or a landowner, cuts a trench across your property and moves the watercourse to flow onto a third party's property when it flowed someplace else. And whether or not there are permits or not strikes me as being superfluous or irrelevant. So when you start talking about whether or not there was some entity that decided to give them imprimatur to allow a continuing trespass to be imposed on your property, it seems to beg the question because all you end up doing is creating the situation where the Tort Immunity Act then comes in. Whereas if you were arguing a continuing trespass, which is get off my property, get your dogs off my property, get your cattle off my property, whatever, what does a permit have to do with it? Getting to that point, did this pond ever flood or overflow before? No, and we allege that in the complaint. And that is really a very, very important point, Justice, because prior to, and this is in the complaint of June 26 of 2013 when there was this big flood, the waters began creeping and creeping closer to the office. Now, that had not happened until the village acquired this pond. They acquired an interest in the pond. They didn't purchase a fee simple interest, but they acquired an interest that gave them the ability to control it, in fact, the right to rehabilitate it. So we moved in next to the pond, but after that, then they took the pond and they completely reconstructed it. They drained it, reconstructed it, and that's where the permit part comes in. Because if you're going to do that, according to the Watershed Development Ordinance, you have to comply with a whole bunch of requirements, even if you are a municipality. Unless you get an exemption from the watershed, or forgive me, the Stormwater Management Commission, you're obligated to comply with all of these engineering requirements. Not only did the village not comply with all of these requirements, but it changed the contours of the pond so that after, and this is again after we acquired and built our office, it now did it in a way, in violation of the Watershed Development Ordinance, to tip the water to a particular corner of the pond. It happened to be the corner, the only corner, where there was a building, and it was our building. Let me ask you, we've read the, familiar with the facts, what version of the ordinance is referenced in your complaint? The version of the ordinance, I will... Because I didn't specify in your pleadings or in your briefs which version. That's true, and I would say that the citations are to the most recent version, but the actual text is the actual text as contained in 2001, 2002, and 2003. So there's no question that the village of Lake Zurich was always a certified... That's not a stipulation, that it was a certified village during this time, which means it is required to comply with the Watershed Development Ordinance any time that it engages in the development, which under the terms of the ordinance, that's what this reconstruction of the pond after we moved in was. You rely heavily on the Van Meter case, correct? I do. Is there any indication in Van Meter that the public duty rule was even argued as a defense? No, interestingly, it was not. And it also involved a different version of the Tort Immunity Act, correct? It did, because it related to discretion. But we thought that it was an important case because in our case, we believe, first of all, looking at the complaint and taking all of the allegations as true, that none of the immunities apply. But in this case... The complaint is there, and the trial court, for whatever reason, as we read it here, found that all of the counts were barred by the Immunity Act, correct? Correct. Even the Mandamus count, which has nothing to do with the Tort Immunity Act. Can you tell us just briefly in summary why the Immunity Act doesn't apply? Well, 3105, injury caused by weather, does not apply because that particular provision says that it is the effect of the weather conditions as such on the use of streets, highways, alleys, sidewalks, or other public ways. That's not the situation. We do not allege any damage caused as a result of weather effects on the use of streets or public areas. Common sense tells us that. Okay. This is not used for pedestrian traffic or for vehicle traffic. It's a water retention pond. I agree with you, Justice, but that was partly the basis for the trial court's decision. Well, the trial court, we don't have a transcript of the hearing. Why don't we have a transcript of the hearing? Because I didn't order one. So that's on me. Even though it's the noble review, it's always helpful to have the trial court's analysis and the arguments of the parties. Sometimes you'll have a stipulation at oral argument that is not a part of the record because the parties don't order a transcript. And that's just like not citing the ordinance or which version of the ordinance you're referring to. That's a problem for you. That's on me. And the trial court did say in the written order, just in general, an act of God or the immunities. Well, I believe, and I may be mistaken, but I think the order said the immunities cited by the village. And I'm addressing the immunities cited by the village. Why doesn't 103 apply? 103 doesn't apply because we are not alleging the failure to enforce the law. You just argued that they didn't enforce the ordinance. They didn't do these things that they're supposed to do under the ordinance. That's your argument. You're bringing it to your complaint. Right, but it's not their failure to enforce it. It's their failure to abide by it. For example, let's say that there was a police officer who's driving 100 miles per hour chasing somebody who had an expired registration. He hits a pedestrian. So the officer's village is sued for negligence. Now, in that case, the complaint would allege that the officer was violating the speeding ordinance. Now, there would be no suggestion that there's immunity because there was a failure to enforce the speeding ordinance. The problem is that the officer was violating the speeding ordinance. It's the same thing here. Let me sit and clarify that. A public entity you're saying is under no duty and is not liable for the failure to provide adequate services, adequate activities. But you're saying this is an act of omission. This is an act of commission, you're saying, that takes it outside of the immunity act. Is that sort of what you're saying there? Absolutely, because they're acting. This was not, for example, a failure to inspect. This was an affirmative act in violation of the law that they have not denied being subject to. And they violated the law in many ways that caused the injury to our office. Are you, because I'm not sure you've ever said it, I wrote a case a long time ago about the village of Addison being prosecuted because they didn't enforce their ordinances relative to a swimming pool latch on a gate, which would be, as I recall, enforcement. I agree. But they weren't failing to abide by the ordinance because it wasn't their gate. It wasn't their latch. And so you seem to, for want of a better cliche, beat around the bush by addressing this as abiding versus enforcing, as opposed to being the party in question, the tortfeasor who supposedly did these acts, that if they were a private citizen would be essentially, if not the sole proximate cause, the major proximate cause, literally the homeowner that supposedly didn't abide by the ordinance and wasn't enforced by the village or a city. The homeowner who violates these ordinances, which are prima facie negligence in some instances, may be liable, but the village or the city is not because they're not claiming that the city destroyed the step or was on notice that they had to fix the step because it was on private property instead of on public property. So when you make your arguments, you seem to be suggesting, not very clearly, that the village is the perpetrator of the violations of these ordinances, as opposed to merely looking the other way while some third party does these things. Well, Justice, I agree, but I don't know how you can say that it's not very clearly because it expressly says that the complaint expressly says that the village is the perpetrator. In fact, in paragraph after paragraph... I'm suggesting to you not necessarily that. I'm suggesting to you when you start talking about why an immunity under the Tort Immunity Act applies or doesn't apply, the reason why it doesn't apply is usually not because you're the perpetrator. Do you understand what I'm saying? Well, I do. As Justice Hudson says, it's an act of omission as opposed to an act of commission. I do understand that, but when analyzing 2103, you have to address the issue of whether or not you are the perpetrator or whether you are the person who's supposed to be enforcing it against the third party because every single case that addresses the failure to enforce a law against the third party is a case that involves the village, for example, failing to enforce a noise ordinance against a... Failing to do something as opposed to causing the problem. Right, and that is part of the issue, but the main issue is that, just as Justice, you mentioned, it is not... This is not a case where the village is alleged to have failed to enforce the law against some third party. Just like my police officer analogy, it is a situation where the village, the municipality, the public entity itself is the violator of the law. Do you have a case that makes that distinction? That it makes a difference? That the village is the violator by not enforcing their own ordinance as opposed to somebody else not complying with the law? I don't, Justice, but... Okay, let me... Please. I'm going to ask shorter questions. The public duty rule, you assert in page 24 of your brief, you claim that the village preached its duty, not to the public at large, but specifically to you by renovating the pond next door. Correct. So you're arguing special duty, correct? That's one of our arguments. In Zimmerman v. Skokie, didn't the Illinois Supreme Court hold the operation of the special duty doctrine as an exception to the immunities and defenses available to a governmental entity under the Immunity Act is unconstitutional? Have you read Zimmerman v. Skokie? I have read Zimmerman. That was the holding of the court. You can't argue the special duty exception to get around 103 or any other tort immunities. But I'm not using the... That seems to be your argument, though. No, I disagree. You're not arguing special duty? Well, I am with regard to the public duty rule, that common law shielding of liability for the village. But with regard to each of the specific immunities under the Tort Immunity Act, I am arguing probably most strongly the very language of those statutes. Now, the special duty rule, the special duty exception, if you will, we assert it as the second basis for why the public duty rule should not preclude our claim. And you may know under the Coleman case, the Supreme Court is taking this issue up right now. But the public duty rule, as I think you mentioned, Justice, it relates to a failure to provide services generally to the public. That's not what this situation is. And I don't have to go into the details to... Again, how is this any different than, for example, the village has, in the course of its sewer maintenance, blocked the outlet to your lateral line into the main sewer causing a backup to your property alone. How is it different than this? Wouldn't the Tort Immunity Act be applied there? Right. How is this different? Because in this case, this is a situation where they specifically created the danger to a specific landowner. This is not where they had a general duty to, you know, we're not alleging that they failed to provide adequate stormwater services to, you know, a subdivision. I understand you're saying it's a different setting, but it's still the city or the village doing work to divert water into a location that does damage to your property. Right. And they created that specific damage to one individual landowner. And like the Lawson case, it's a failure to provide police services. Another case is a failure to provide vaccination services that the health department provided, fire services. That's not what this case is, I would respectfully submit. Did you seek an injunction against the continuing trespass that might arise out of the reconfiguration at this time? We do not have pending a claim for an injunction. One of our claims, too, and this is an important point, is our request for a writ of mandamus. And under the Tort Immunity Act, the Tort Immunity Act says explicitly nothing in this act affects the right to obtain relief other than damages. And the mandamus, you know, obviously a claim for mandamus is not a claim for damages. So then the question arises, why in the world would you dismiss a claim for a mandamus under the Tort Immunity Act or under the concept that the Act of God concept? Do you want me to address the Act of God issue? Well, the Act of God issue was something that the trial court based its judgment. We don't have a transcript of what was said or not said at the hearing. We don't know what the trial court relied upon. As you just mentioned, earlier when you were describing facts, there was a flood caused by rain. That's in your complaint. The trial court either picked up on that or picked up on something that was argued or maybe stipulated to at the hearing. We don't know. You'll have time to make your follow-up unless you want to. It looked like you weren't going to answer the question. If you want to answer the question, go ahead. Well, I'm sorry. I thought that that was more of a... Well, if you want to address that, I mean, we don't know, correct? I mean, there's nothing in the record other than your complaint. Well, we know, though, through the record, the record is sufficient to show that the court based its decision on the Act of God and the tort immunities that were cited, so we know specifically. So we would submit that upon de novo review, if you were to look at each of the immunities and determine whether or not those immunities applied to the situation pled, assuming all of the facts that were pled in the complaint to be true, the properly pled facts to be true, there's a sufficient record to make a decision as to whether or not the court erred in granting the motion to dismiss. And with respect to your mandamus claim, your argument is that mandamus applies because they had no discretion. They were supposed to enforce the ordinance. Is that part of your argument? Well, there's no claim of immunity based on discretion. The immunity does not apply because the Tort Immunity Act says that it doesn't apply to a mandamus action. Whether or not the Tort Immunity Act applies depends upon, in part, the type of relief that is requested. Obviously, the type of relief requested in the mandamus is more for action, for it to act or to fail the act, or just, I guess, the mandamus is to act, to fix the pond. And the Tort Immunity Act expressly states it is not applicable to that type of relief saw. So there's no basis whatsoever to apply the Tort Immunity Act to the count seeking a rid of mandamus. And then, if I could, I wanted to address the Act of God. I cited the case law, the Evans v. Brown, that cites other case law that says the Act of God principle, doctrine, does not apply unless, and I quote, a loss or injury is due to the Act of God when it is occasioned exclusively by natural causes. And we, you know, allege in detail how this event was not exclusively. Obviously, if it had never rained, there would not have been a flood. But we also say, and also explain in detail, in the absence of the violation of the ordinance and other negligent acts, there would have been no flood. The water would not have risen to where it did. Thank you, Justice. Do you have any more questions? Mr. Ambert? Thank you. My name is John Ambert. I'd like to address the issues other than mandamus and third-party beneficiary. I would, with the Court's permission from my associate, Rebecca Fozo, to address those issues if they come up. I'd like to draw the Court's attention to what the specific allegations are in the First Amendment complaint. Paragraph 50 of Count 1, subparagraphs A through L, every single one except L makes reference to the WDO. Count 2 is the same thing. A through L, one counts for malicious or willful and wanton. This whole complaint is premised upon the WDO and a flood for the first time in 24 years, which brings it within Wright v. City of Rockford. One thing that hasn't been addressed, or two things that haven't been addressed, which I'd like to bring to the Court's attention, is this is a non-exclusive easement. The village's property is two parcels away. It's a non-exclusive easement, and that hasn't been addressed. Mr. Salve's position is that we own and control this property. We only own and control this property for what's outlined in the easement agreement, subparagraphs 2A and B and C, and that's only for specific purposes. Do you have the right to contour the pond? Pardon? Do you have the right to and the authority to contour the pond? I do not believe that is in the easement. The answer is no, sir, not without their permission to do so. It's very specific with respect to the easement, what we're allowed to do. It says it's a non-exclusive easement over the property for maintenance, repair, and replacement, and that's under 2B. There's nothing there except repairing and replacing the stormwater laterals, culverts, drains, and associated laterals. Well, I believe there are allegations that you didn't do just those things under the non-exclusive agreement, that you actually reconfigured, which I think is something different than maintain or repair. Right. So it sounds like you've admitted that you have breached the contract or the easement to the extent that you've done things that are not contained in the easement. No, we haven't admitted to that at all. I fail to see that, what follows there. But then that brings us to? Well, then you raise the red herring, which is you're arguing that things that have nothing to do with whether or not the flood occurred based upon the allegations of fact, they're not claiming that it was your repair or your maintenance that caused the flooding. They're alleging that your reconfiguration did. Which is a violation of the WDO. And that brings us to 2-103, which doesn't have any exception for the immunity provided. I've outlined to the court, I think, 10 or 12 provisions of the TORP Immunity Act, which has exceptions, exception for willful and wanton conduct, this and that. And 2-103 and 2-104 have absolutely no exception. It's absolute. The other thing I'd like to really bring to the court's attention, if I can, because the WDO permeates everything. And, you know, we have that in whatever version is in this supplemental record, which you allowed a few moments ago. You have under Roman numeral 8, section 8, the disclaimer of liability. It's not to be used. I'd like to bring up Justice McLaren's own words on a similar case on that, which was Dede v. Tamboni, where the court wrote, Even assuming that the ordinance as quoted by the plaintiff is accurate, we conclude that it does not expressly impose liability on property owners, such as defendants, for violations of its terms. The justice went on to write, The ordinance lacks express language imposing liability on such persons for failure to repair, and concludes the paragraph by saying, Suffice it to say, the purported city ordinance at issue here lacks explicit language and cannot be interpreted to impose liability on property owners or occupiers for violations of its requirements. I want to discuss what happens. My guess is that the appellate court always hears arguments in the extreme of what happens if they rule this way. Well, I'm going to give you one of those, but then I'm going to give you one that gets closer to home. If there's a violation of the WDO in Lake County or McHenry County, where I grew up and down in Jackson County in southern Illinois, Mississippi River floods regularly, what's to prohibit somebody saying, well, you violated the WDO up there, so therefore we can sue you down in Jackson County, 300 miles away. Okay, that's a fantastic example. Let's hit one closer to home. If the villages that are members of the WDO can be held liable under the terms of the WDO, and I expect that Mr. Salvia or any competent attorney can find a violation here anytime you dig a hole in Lake County, that what happens when the sump pump goes out in somebody's basement? Do we think that State Farms is not going to have a bazillion segregation actions for the property damage that they paid out against all the municipalities that are a member of the WDO? Let me just ask you this. Regarding the public duty rule that you argued in your brief, how is the villages rehabilitation upon an exercise of a government function when it was done pursuant to a private agreement? When it was done pursuant to a private agreement, please. Okay, I'm not following the question. I apologize. Okay. The public duty rule, how is the villages rehabilitation upon the exercise of a government function when it's done pursuant to a private agreement? It's a private agreement insofar as it's for those people around it of which the Salvia Law Firm is not part of that. The Salvia Law Firm was on the pond already when the work began, correct? Number one, they are alleging that the work began. That's just an allegation. Well, we're at the pleading stage, correct? Yeah, we're at the pleading stage. So assume for the sake of my question, how are they not an intended third-party beneficiary? Maybe your colleague is going to address this. Sure. And you understand as it relates to the public duty rule, this is a private agreement with the church, correct? No. The answer is it's an agreement with the church, but I can't address the public duty rule. And the public duty rule, especially the Zimmerman v. Skokie, doesn't have exceptions that can be used to override the Tort Immunity Act. It states that right there. And the special duty exception, as I've pointed out in my brief, Does not apply. unless you have physical custody. The only time that's ever come into play that I'm aware of is when, for example, you have a prisoner, somebody that you have physical custody of and they need medical care or something like that, then you might have a public duty exception. Well, those are examples where it's been applied, but there's no cases that say it can't be applied in some other circumstances. That's the flip side of it. I've never – I concede that's the flip side. I've never seen it applied. But bullet point four of what you have to prove for the public duty rule exception is you have to be in the physical control of the entity. That's what it says here. Counsel, are you aware of the Jay Doe v. White case out of the 4th District? I am not. You might want to read it because there they talked about – they held that there's a distinction between the general rule that the government's ability is under no duty and not liable for failure to provide adequate services, but where the situation is different where the agency itself creates the dangerous condition. And what he is saying, Mr. Sullivan seems to be saying is, look, they created a dangerous situation to one specific parcel, our law office, by doing something. They didn't fail you to – the allegation is when they failed to act to protect our property, they did something specifically that directly caused damage. Isn't that a little bit different than the general rule of non-liability? And I would agree with you except for this point. That's not really what they have alleged. If you look at paragraph 51 of their first amendment complaint where we have A through L and what they've argued in their appellate brief, it's the WDO that they're arguing. They're arguing these are the violations. And the A through L, every single one except L, is the WDO. And the WDO has the disclaimer of liability right on it. Just a rhetorical question for the members of the court. If you do, as Mr. Sally would ask, how many members are going to remain in the WDO? What benefit would there be if this is used as a means to get to the municipalities' coffers? Doesn't the word enforce in 103 refer to, generally speaking, failing to apply the law against another party as opposed to – No, absolutely not. Generally speaking, I'm just saying, as you remarked earlier, the special duty exception has always been applied in these sort of situations. Again, with all due respect, you'd be tiptoeing on the toes of the legislature if you take that position because the legislature specifically creates exceptions throughout the act. There's no exception in 103, there's no exception in 104, and there's no exception in 3105. There's just not. As I understand your argument, if the city decided to start dumping on the Salvy property, whatever it was that they wanted to dump, in violation of anti-dumping ordinances, that the city would be immune under the Tort Immunity Act, as far as you're concerned. No, the Tort Immunity Act, for example, if they came up with a dump truck and unloaded debris on their property, I don't think that property is under 3105 for weather conditions, and it doesn't – 2103 and 2104 is really addressing fouling of other laws and permits. But there are anti-dumping ordinances, and it would seem that they would be immune from those anti-dumping ordinances. No. There is not – there's immunity for certain things, but there wouldn't be an immunity for what the court describes. We're not arguing that. We're not arguing there's absolute immunity. We're saying when there's a weather event for the first time in 24 years, that that is immunity that we enjoy. If they're saying that we have violated the WDO, which permeates that first – I thought count three said it was a violation of the common law. Well, you also said it's a violation of the common law. I'm not arguing that there is a possible case law to support the common law. The common law is the landowner bears a duty not to increase the natural flow of water onto the property of an adjacent landowner. I understand that. And the court – this court's even applied that to municipalities. I get that. But this court has also, for example, in Wright v. Rockford, said, wait a second. When you have this tremendous rainfall and it's the first time it's ever occurred, we're not going to do that. We're not going to ignore reality. Wait a second. If that's – if you're going to throw a fact in about this is the first time in 24 years, or that this is an act of God, or that the rain, even though it lasted only for three hours, it was 10 inches an hour or something, you're throwing facts in the case. Was there a motion for summary judgment filed here? No. Was there a motion for judgment on the pleadings where supposedly the facts indicated, according to the complaint, that this was an act of God? Sure. I don't like the word act of God, but I'm going to use the words that they used. And there was paragraph 4 of their complaint – I think it was paragraph 55 of their complaint where they talk about the heavy rains. That's their wording. It's not – that's why we went for a motion to dismiss. The pond is a drainage pond. It's not, quote-unquote, the natural flow of water, correct? I don't think water is supposed to flow out of it. It's a retention pond. Now, let's look at it from a reality point of view. All retention ponds, almost all, at some point in time, they do overflow during heavy rains. I mean, they're not an absolute insurer of protection of the municipal residents. May I – if there's no more questions for me, may I concede a few minutes to my associate? Sure. Okay. Thank you. Is it FOSO or FAZO? It's FOSO, sir. May I proceed, Ms. FOSO? Okay. May it please the Court, I'm going to address the issue discussed regarding the plaintiff being a third-party beneficiary. It's his argument pertaining to Count 6 of the complaint. The plaintiff in Count 6 incorporates Paragraphs 1 through 44, the common allegations, into Count 6, which he claims is a breach of contract third-party beneficiary claim. However, I don't think that's truly a third-party breach of contract – third-party beneficiary breach of contract claim. In the sections he incorporates in, Paragraph 44 specifically talks about common duties, that the village had a legal duty to comply with the WDO, that the village had a common law duty to refrain from collecting and discharging water on the plaintiff's property. Those, to me, are tort claims. In regards to third-party beneficiary, for a third-party, for an intended third-party beneficiary, where the plaintiff actually has rights to sue, that needs to be affirmatively in the language of the instrument, which is the easement agreement that the plaintiff cites. The plaintiff is not a party to that easement agreement. The only parties to that easement agreement are the village, the library, and the church. Am I correct in thinking that your argument relates to standing and not necessarily the liability? Yes. I don't think – I'm sorry. No. And in the easement agreement, as Illinois case law has told us, that it's not enough that the party should have known the plaintiff would have been a beneficiary to the agreement. It needs to spell it out in the easement agreement itself, and it simply doesn't do that here. The easement agreement was attached to the complaint. There's no reference to the plaintiff in that. The plaintiff's property is not even a part of the pond parcel. And, in fact, the easement actually refutes the allegations in the complaint that the plaintiff would be a third-party beneficiary. That's under Sharkey v. Snow. The plaintiff also claims that the easement provides him, confers third-party beneficiary status, that the village needs to take responsibility under the WDO to prevent a retention pond. Am I correct in assuming that what the plaintiff is attempting to establish is that they have rights under the easement agreement, which may or may not be in addition to their rights as landowners or property owners to not have somebody divert water over their property? Yes. I believe that the plaintiff is saying that he is an intended beneficiary in that agreement. And, as I said before, he's just simply not the law firm or the law office or the plaintiff is just simply not a party to that agreement. The case law also creates a presumption, does it not, that there's a presumption against third-party beneficiary status, correct? Absolutely. I mean, that's where they start out, there's a legal presumption against it. Absolutely. And the case law seems to make it pretty clear that if you are a third-party beneficiary, that needs to be spelled out within the agreement because it does create liability for the other parties to the agreement. In addition, with the third-party beneficiary, the easement agreement itself in Section 10 states that the easement is the entire agreement and throughout the complaint, the plaintiff seems to bootstrap the provisions of the WDO with the easement agreement and, as I said before, Section 10 clearly states that the easement embodies the entire agreement. Can you address the mandamus argument? Absolutely. In order to have a writ of mandamus, the Illinois Supreme Court has told us that is an extraordinary remedy. It's used to enforce the performance of a mandatory provision. The plaintiff needs to show that he has a clear right to the relief, that it's a clear duty on the respondent to act, and a clear authority of the respondent to comply with the writ. I have a couple of examples. The plaintiff is saying that the village, the relief he's requesting, is that the village redesign and reconstruct the parcel, modify the pond to lower the BFB, report to a county that the pond parcel is in violation, build appropriate lobbies and berms, and redesign and reconstruct the pond parcel and the pond. Now, in reading the case law, in order for a writ of mandamus to truly be a writ of mandamus, it needs to be a mandatory action, not a discretionary action. I don't know how much more discretionary you can get than to redesign, reconstruct, build appropriate, which I'm not sure what appropriate, lobbies and berms are, and modify the pond. I think those are all discretionary actions. What if I were the trial court judge and I entered a writ of mandamus ordering the village to reconfigure the property any way it so desires? If the net effect, the bottom line, the end result, is that if the water is going to overflow out of this retention pond, it doesn't go on to the salvie property. With regard to that hypothetical, I don't think there is respectfully the court ordering the village to do something as opposed to a statutory obligation for the village to do something. I think there's something different there. If there's a common law right not to have your property inundated by an adjacent property, especially if the water course has been diverted from a place that was going to the new place that is damaging the landowners, it would seem that in order to enter an injunction to preclude continuing trespasses, that the injunction or the mandamus, however you wish to call it, whether it's supposedly based upon a common law right or upon the issue which I'm not sure that Judge Stark addressed, which is whether or not the Tort Immunity Act applies to mandamuses. But essentially you're arguing the idea that if there is to be discretion exercised in any way, shape, or form, the mandamus cannot be issued. Is that correct, or am I missing something? I believe what the plaintiff is asking for is calling for discretion. I have looked at two cases examining mandamus. One is Burkett v. Konetsky, and in that case the state filed an action for writ of mandamus. The underlying trial court had told a sex offender that he didn't need to register in the Sex Offender Act because he was a minor. The Illinois Supreme Court came back and said, no, the writ of mandamus needs to be issued because pursuant to the act, that's a mandatory obligation. He needs to do that. And then I compared it with another case, Clark v. Community School District 303, which was just decided in January, in which the parents alleged a reorganization of some elementary schools was unlawful under the school code, and they asked the court to undo the reorganization, and the court had said, no, we cannot issue the writ of mandamus because the school district has discretionary powers to reconfigure the schools under the school code. I think what Mr. Salve is asking for is something similar or analogous to the Clark case where he's asking for the village, the type of relief he's asking for is discretionary as opposed to the Burkett case, which was a mandatory obligation. Is that to be determined as a matter of law? Because it would appear that the trial court judge didn't rule that way, did he? I don't know. He ruled it was an act of God, and the Tort Immunity Act applies. And you're arguing that the classic, I think, defense, which is that mandamus will not be issued regarding matters of discretion, and I don't think the trial court made that ruling, did it? He didn't, but we can affirm for any basis on the record, supported by the record, correct? Correct. And I think also in regards to this mandamus claim, I think it is confusing because it does incorporate into it paragraphs 1 through 59. 1 through 59 includes a willful and wanton trespass count, which is a tort count, which I believe Mr. Yenberg addressed earlier with you. So I don't think it's confusing because it does combine those tort counts as well. So we want you to do this with willful and reckless disregard? Right. I didn't go that far. We don't have any other questions, and your time has passed, so thank you very much. Thank you so much for the opportunity. Mr. Selvig? Thank you. I just want to make a few more clarifications, if I could. The question was asked whether or not under the easement agreement the village had the right to rehabilitate, and forgive me that I don't have the language right in front of me right now, but the language of the easement specifically says that the church further reserves the right to relocate the boundaries and configuration of the detention pond and related easements in the location of the storm sewer lanes and related easements. That's not the section I was looking for. But when you look at the easement agreement, you will see that, indeed, the village has the right. In fact, the whole easement contemplates this forthcoming rehabilitation and reconfiguration of the pond. The other important point relating to the timing of our office going in next to the pond, of course the pond existed. Our building went in, and this is in the complaint, and it was subsequent to our building going in that this recontouring, reconstruction, redevelopment of the pond took place done by the village. If you're a third-party beneficiary, then why shouldn't the hold harmless clause apply to your law office? The hold harmless clause in the easement agreement? I mean, if you're a third-party beneficiary, then that must apply to you, correct? You know, I have to confess that I haven't contemplated that, Justice. Well, it's in there. It's in there. It's clear. The language could not be any more clear. It doesn't give rise to a cause of action. Okay. So do you want to be a third-party beneficiary or not? Well, of course. Yeah, no, that's a fair question. You know, the main argument, and it's sort of ironic because I'm arguing the appellee's position, but the main argument is that because we're not expressly named as parties that we can't be third-party beneficiaries. So I know that's a fair question. It's a very good question, and I have to confess I don't know the answer to it. Justice Albee, can you clarify another point? When I asked Mr. Yambert if he was aware of this recent case on the Fourth District, Doe v. White, where they stated that the public duty immunity applies where the plaintiff alleges damage is based on the governmental enemy's failure to perform certain governmental services versus where the alleged conduct by the government or municipality specifically created the danger, which is what you're alleging here, he said, well, that might be a theory or a word-set effect, but you didn't plead that. So what's your response to that? Well, my pleading, first of all, taking the allegations as they're applied and the reasonable inferences therefrom, I mean, it's clearly set forth that they created this danger that ultimately resulted in the damages to our building. And I will say, I wish I could say, oh, yeah, I know that case. I should have found it. But I will say, though, that I've seen in law review articles, and that's one of the points I think I made in my original argument, that they specifically created this danger, and that's one of the reasons why the public duty rule doesn't apply. Could I address one other thing that Mr. Yambert brought up? Because he brought up and his brief brings up a lot of issues that relate to the facts. For example, he said, well, you know, if the Mississippi River floods regularly, you know, the folks who are flooded may be able to bring claims against the local municipality. That really is one of the cornerstone aspects of our argument, and it's the Van Meter case. That is factually possible, what he's arguing. He could argue at trial that this was a flood of biblical proportions, and we could have complied with the WDO, and it wouldn't have made a bit of difference. But they didn't file any affidavits with their motion to dismiss. They didn't file a motion for summary judgment to say that, that suggested that. They could have said, oh, he said it's a heavy rain. It wasn't. It was more than heavy rain. It would have happened anyway, but there were no affidavits that were included, and it's just like the Van Meter case. If you're going to argue for application of these immunities, if you're going to argue that it's an act of God, at this stage where this complaint properly makes all of these appropriate pleadings, you've got to give the court facts that are the basis for granting the motion to dismiss. This trial court did not have those facts, just like in the Van Meter case. I have a final question to ask you. Mr. Yamaguchi raised this almost from perhaps a public policy perspective. He's saying, you know, if you rule in favor of the plaintiffs the way they want you to rule, municipalities are not going to want to touch the WDO or get involved in that. What's your reaction to that? They can get exemption, and they can get an exemption, or they can get a variance that is approved by the Stormwater Management Commission. They don't have to comply with the WDO if they get the appropriate exemption. And then they can get an exemption, and they can say, look, we can comply with certain aspects of the WDO, but not with regard to others. And the whole purpose of the WDO, as it says, is to protect the buildings of private citizens next to these developments, including retention parks. The purpose of the WDO is to protect folks like us. They completely ignored it. Well, you say they completely ignored it. They didn't completely ignore it because they did work. They did divert water, correct, for the new buildings that were constructed? Yes, Justice. But they didn't even get a permit. They didn't even apply for permits. I mean, as you say, they completely ignored it. They didn't completely ignore it. They failed to enforce it properly, correct? They failed to abide by a litany of its provisions, including the most fundamental one, getting a permit. What's the difference between abide by and enforce? It goes back to the police officer situation. If the police officer is speeding and he causes an accident and there's potential municipal liability, partly because of the speeding, it's not that the officer failed to enforce the speeding ordinance. It's that he did not comply with it. He did not abide by it by going to the speed limit. Thank you. Okay. We have another case in the call. Court's in recess.